# IN THE COURT OF APPEALS OF IOWA

No. 20-0859
Filed September 23, 2020

**IN THE INTEREST OF H.M.,**
**Minor Child,**

**J.M., Mother,**
　　　Appellant.
_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Lynnette M. Lindgren of Faulkner, Broerman & Lindgren, Oskaloosa, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Misty White, Sigourney, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and May and Ahlers, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to her two-year-old child, contending termination of her parental rights is not in the child's best interests.

This family came to the attention of the department of human services (DHS) in May 2018 due to concerns of the mother's methamphetamine use while being a caretaker for her three children (including H.M.) and two minor siblings. The mother agreed to voluntary case management through DHS. In September 2018, the DHS social worker providing case management learned the mother was not attending substance-abuse treatment as recommended. The mother also became difficult to reach by Family Safety, Risk, and Permanency services providers. The social worker requested the mother submit to drug testing, the results were received on October 19 and came back positive for methamphetamine. A child-in-need-of-assistance (CINA) petition was filed.

The mother's children were adjudicated CINA in November. The children remained with the mother until January 8, 2019, at which time H.M. was removed from the mother's care and placed with a friend.[1] On March 15, H.M. was moved to a relative placement. However, the relative asked that H.M. be placed elsewhere in August, so H.M. was again moved to the home of a maternal aunt.

The mother entered a residential treatment program in October and H.M. was returned to the mother's care when she was in the residential treatment facility. Unfortunately, the mother again tested positive for methamphetamine after she left the treatment facility. On January 24, 2020, H.M. was again placed with

---

[1] The other two children were placed with their biological father.

her maternal aunt, where the child remained at the time of the May 26 and June 2 termination-of-parental-rights hearing. The mother continued to use methamphetamine at the time of the hearing and was without transportation and housing. The juvenile court terminated J.M.'s parental rights to H.M. under Iowa Code section 232.116(1)(h) and (*l*) (2020). The mother now appeals

"We review proceedings terminating parental rights de novo. We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re Z.P.*, ___ N.W.2d ___, ___, 2020 WL 5268435, at *3 (Iowa 2020) (citation omitted).

Because the statutory grounds for termination are not disputed, we turn to whether to termination of parental rights is in the child's best interests. *See In re P.L.*, 778 N.W.2d 33, 39–40 (Iowa 2010). The mother asserts she has a close bond with H.M. and notes that the child is in the care of a relative.

In determining whether termination of parental rights is in the child's best interests, we must give primary consideration to "the child's safety, . . . the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). This assessment may include whether the child has been placed into a foster family, the extent to which the child has been integrated into the family, and whether the foster family is able and willing to adopt the child. *Id.* § 232.116(2)(b).

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home

for the child." *P.L.*, 778 N.W.2d at 40. "[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).

We acknowledge the mother loves her child and is described as a good mother when sober. However, H.M. is two years old. At the time of the termination hearing, H.M. had spent thirteen of twenty-eight months of life out of the mother's custody. The mother continued to use methamphetamine and marijuana at the time of the termination proceeding, more than two years after H.M. came to the attention of DHS. H.M. is in a preadoptive foster home with a maternal aunt, and is able to have frequent contact with the older children.

The mother argues that because the child is in the care of a relative, a guardianship could allow a continued relationship—presuming the mother can attain sobriety. But, "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (citation omitted). By their very nature, guardianships can be modified or terminated. *See id.* at 477–78 (discussing the practical realities of guardianships). Placing the child in a guardianship would prevent the child from reaching much deserved permanency. We agree with the juvenile court that H.M. deserves permanency now. We affirm the termination of the mother's parental rights.

**AFFIRMED.**